IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| vs. : | 1:18-cr-123-6 |
| : | |
| HENRY ZELAYA-MARTINEZ, : | |
| : | |
| Defendant. : | Honorable Rossie D. Alston |
| : | |

**MOTION TO SUPPRESS EVIDENCE**
**SEIZED FROM SEARCH OF CELLULAR PHONE**

Comes now, Defendant, by counsel, and respectfully moves this Court to suppress all evidence flowing from the seizure and subsequent search of his cellular phone where he asserts law enforcement obtained the code to his phone, facilitating the execution of a search warrant,[1] through subterfuge in violation of the Fourth and Fifth Amendments. In making this motion, Defendant further relies on all other rights safeguarded by the Sixth and Eighth Amendments to the United States Constitution.

**RELEVANT FACTS**

On November 18, 2018, the Defendant was arrested by law enforcement at his mother's residence in Alexandria, Virginia. Law enforcement seized the Defendant's cellular phone from him at the time of his arrest. After arresting the Defendant, law enforcement transported him to an FBI facility in Washington, DC and placed him in an interrogation room. Soon thereafter,

---

[1] Being that the Defendant does not challenge the search warrant in this motion, if the phone were opened without law enforcement using the phone's code, this motion would be moot.

1

Special Agent Fontanez entered the room with the Defendant's cellular phone in his possession, placed it on the table, and began talking with the Defendant prior to advising the Defendant of his Miranda rights.[2] During this conversation, the agent pledged that he would call the Defendant's mother after the interview and let her know that her son was in Alexandria. The agent also mentioned that the Defendant's sister loved him and that the agents are people like the Defendant.

The agent then proceeded to ask the Defendant a number of booking and softening up questions prior to the administration of Defendant's Miranda rights, which facts the agent claimed he needed to put "into the system." The agent asked when the Defendant came from El Salvador, how he crossed the border (whether walking or in the "bestia"—by train), complete names of immediate family (to also put into the system), what he did for work, how he did his roofing work, how long he had worked in roofing, how long he had been in Alexandria, when he arrived at his mother's house in Alexandria, where he had come from (the Defendant stated Michigan), who the Defendant was staying with in Michigan, whether he had a "gatita"[3] there, whether he was working in Michigan, and if he came to visit his mother in Alexandria for Thanksgiving ("dia del pavo" or "turkey day" in English).

Prior to administering Miranda, the agent also asked the Defendant for the number to his cellular phone (which the Defendant did not know), the type of phone, and if the Defendant had bought the phone. After administering Miranda and obtaining incriminating statements during a

---

[2] Defendant challenges whether his Miranda waiver was knowing and voluntary in a separate motion to suppress.

[3] In Spanish, the word means female kitten—an apparent reference to a girlfriend.

nearly hour long interrogation, the agent explained the process going forward, again pledged to contact the Defendant's mother to let her know where the Defendant would be, and explained other details of the process. It was also mentioned to the Defendant that he might get a telephone call later that day.

Agent Fontanez then asked the Defendant whether he remembered his mother's telephone number, which the Defendant, like his own phone number, did not. The agent asked whether the number was in the Defendant's phone, which the Defendant confirmed. The agent then provided the phone to the Defendant to open the phone to obtain the number. After the Defendant opened the cell phone (via making a series of finger swipes in the shape of a house on the phone's screen), the agent took the phone, located the number, and provided it to the Defendant. The phone soon after re-locked. The agent then confirmed he had the correct code by immediately reopening the phone using the swipes shown him by the Defendant and intruded into its contents purportedly looking for the phone number to the Defendant's own phone. The agent then obtained the Defendant's assistance to identify the phone number to the phone. After obtaining the Defendant's own number, the agent powered off the phone and falsely told the Defendant that it would be placed in his property.

Instead of placing the phone in the Defendant's property at the Alexandria Detention Center, the agent transported it to an FBI evidence control room in Manasass, Virginia. Three days later, the agent applied for and obtained a search warrant to search the Defendant's phone. On information and belief, the code obtained from the Defendant, in order to retrieve his moth-

3

er's phone number, was used to unlock his phone to facilitate its search by warrant.[4]

## LEGAL ANALYSIS

DEFENDANT ASSERTS THAT THE AGENT UTILIZED SUBTERFUGE TO OBTAIN THE CODE TO UNLOCK HIS CELL PHONE TO FACILITATE ITS LATER SEARCH BY WARRANT IN VIOLATION OF THE FOURTH AND FIFTH AMENDMENTS

A. Fourth Amendment Claim

The contents of a cell phone are subject to the protections of the Fourth Amendment and require a warrant to be searched unless an exception to the warrant requirement applies.  See Riley v. California, 134 S. Ct. 2473, 2485 (2014).  If relying on consent to search a cell phone, which would be an exception to the Fourth Amendment's warrant requirement, the Government has the burden of establishing free and voluntary consent by a preponderance of the evidence. Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968)("When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given").  While law enforcement, in certain circumstances, may employ trickery to undercover and investigate crime, a consent search is a "'jealously and carefully drawn' exception' to the warrant requirement" and numerous federal and state courts have struck down "consent" searches obtained via trickery or deception as unreasonable under the Fourth Amendment.  See e.g. Pagán-González v. Moreno ___ F. 3d. _____ (1st Cir., 2019)(finding "consent" obtained via deception unreasonable under the Fourth Amendment where decep-

---

[4] The Government produced in discovery the search warrant and warrant affidavit for the Defendant's cell phone, which warrant was obtained from this Court.  The agent stated in the warrant affidavit that the Defendant "gave me the passcode to the Device so that I could access it and retrieve his mother's telephone number for him. After giving him the number, I powered off the device."  The Defendant will provide the Court with the warrant and warrant affidavit under seal in support of this motion in a separate filing.

tion vitiated consent; collecting cases and noting consent is a "'jealously and carefully drawn' exception' to the warrant requirement")(internal citations omitted); United States v. Tweel, 550 F. 2d 297 (5th Cir. 1977)("It is a well established rule that a consent search is unreasonable under the Fourth Amendment if the consent was induced by deceit, trickery or misrepresentation of the Internal Revenue agent."); see also Bumper v. North Carolina, 391 U.S. at 548-49 (law enforcement's claim of having warrant invalidated consent).

In Defendant's view, law enforcement used subterfuge to obtain the code to his cell phone and then immediately conducted an intrusion into the phone, an illegal trespass, to confirm the code was correct and obtain the Defendant's phone number. In this regard, it is telling that the agent brought the cell phone into the interrogation room with him. If he did not have a goal of obtaining the phone's code to open it, there would be no reason not to simply store it as evidence in anticipation of obtaining a warrant.

Based on the context of the conversation between the agent and Defendant, the code was *only* provided to the Agent for the limited purpose of obtaining his mother's number and nothing more. The Defendant did not authorize the agent to immediately exceed the scope of that search to confirm the code in order to later allow the Government to scrutinize the phone's entire contents. United States v. Dichiarinte, 445 F.2d 126 (7th Cir., 1971))(stating "[a] consent search is reasonable only if kept within the bounds of the actual consent.")(internal citation omitted). The agent's illegal trespass facilitated and irremediably taints the later search of the cell phone's contents via warrant because the illegal obtaining and confirming of the code was used to execute it —that is, the later search of the phone via warrant cannot cure the previous illegal intrusion into

5

the phone *because it is fruit of it.*  Wong Sun v. United States, 371 U.S. 471 (1963).

<u>Fifth Amendment Claim</u>

The code itself, if considered a statement, should be suppressed as Defendant asserts that it was gained in violation of Miranda v. Arizona and the Fifth Amendment.  For this proposition, the Defendant relies on his separately filed Motion to Suppress Statement.

**CONCLUSION**

For all of these reasons, Defendant respectfully moves this Court to grant this motion.  A proposed Order is attached hereto.

Respectfully submitted,

_____/s/_____
Joseph King
VSB # 65632
King, Campell & Poretz PLLC
108 N. Alfred Street, 2nd Floor
Alexandria, Virginia 22314
(703) 683-7070
Fax: (703) 652-6010
jking@kingcampbell.com


_____ /s/_____
Charles Russell Twist
VSB# 35483
Charles Russell Twist, PLC
2111 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
703-812-8686
charlesrussell.twist@verizon.net

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was filed via ECF and thereby forwarded to all counsel of record on this 18th day of November, 2019.

                                            _____/s/_____
                                            Joseph King
                                            VSB# 65632
                                            King, Campell & Poretz PLLC
                                            108 N. Alfred Street, 2nd Floor
                                            Alexandria, Virginia 22314
                                            (703) 683-7070
                                            Fax: (703) 652-6010
                                            jking@kingcampbell.com